1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Leslie Robin Clark, | No. CV-17-03376-PHX-GMS |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of the Social Security Administration, | |
| Defendant. | |

Pending before the Court is the appeal of Plaintiff Leslie Robin Clark, which challenges the Social Security Administration's decision to deny benefits. (Doc. 14). For the reasons set forth below, the Court affirms the decision of the ALJ.

## BACKGROUND

On January 2, 2014, Plaintiff applied for disability insurance benefits, alleging a disability onset date of July 12, 2013. (Tr. at 158). Plaintiff's claim was denied both initially and upon reconsideration. (Tr. at 78; Tr. at 95). Plaintiff then appealed to an Administrative Law Judge ("ALJ"). (Tr. at 106). The ALJ conducted a hearing on the matter on May 4, 2016 and subsequently issued a decision denying benefits. (Tr. at 148, 38). Plaintiff then appealed her decision to the Appeals Council, which denied her request for review. (Tr. at 1).

In evaluating whether Plaintiff was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1] (Tr. at 31-38). At step one, the ALJ

---
[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 32). At step two, the ALJ determined that Plaintiff suffered from the severe impairments of status-post resection hemangioma, including right sided hemiplegia in January 2014, and migraine headaches. (*Id.*). At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (*Id.*).

At that point, the ALJ made a determination of Plaintiff's residual functional capacity ("RFC"),[2] concluding that Plaintiff could perform sedentary work. (Tr. at 32.) The ALJ thus determined at step four that Plaintiff retained the RFC to perform her past relevant work as a customer service clerk. (Tr. at 37). The ALJ did not reach step five. (Tr. at 38).

**DISCUSSION**

**I. Standard of Review**

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either

---

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007) (internal citations and quotations omitted).

[2] RFC is the most a claimant can do despite the limitations caused by her impairments. *See* S.S.R. 96-8p (July 2, 1996).

- 2 -

unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

However, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

## II. Analysis

Plaintiff argues that the ALJ erred by: (A) rejecting Dr. Gordon's assessment of Plaintiff's fingering and feeling limitations, (B) improperly evaluating Plaintiff's testimony as to her symptoms, and by (C) failing to address Ms. Clark's alleged cognitive impairments and additional evidence submitted post-hearing. (Doc. 13 at 1).

### A. Dr. Gordon's Assessment of Fingering Limitation

Ms. Clark does not challenge the ALJ's determination as to her other physical limitations (gait and ambulation), but only asserts that the ALJ wrongfully discounted Dr. Gordon's assessment of her fingerling and feeling limitation. Specifically, Ms. Clark alleges that she cannot perform her past work as a customer service clerk because she cannot type with her right hand. Because Dr. Gordon's assessment is contradicted by Dr. Griffith's assessment (Tr. at 36, 89), the ALJ only needed to point to "specific and legitimate reasons" for discrediting Dr. Gordon. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Dr. Griffith's assessment found that Ms. Clark could frequently reach, handle and finger with her right upper extremity. (Tr. at 36). The ALJ noted that even in Dr. Gordon's own assessment of Ms. Clark's limitation, he found that she could perform tasks such as picking up small coins, and screwing a nut onto a bolt with her right hand with "mild difficulty." (Tr. at 34). The ALJ also pointed out that Ms. Clark takes care of her preschool-age child, pays bills on the computer, performs chores around the house, and drives herself to the gym many times per week. (Tr. at 36). These are specific and legitimate reasons for discounting Dr. Gordon's findings.

Moreover, as the ALJ noted in her opinion, Ms. Clark has not sought out recent specific treatment for this fingerling limitation. (Tr. at 36). This is a choice to control a limitation with a conservative treatment, which is a relevant credibility determination. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). In her opening brief, Ms. Clark points to physical therapy notes that demonstrate she sought specific treatment immediately following surgery, but those notes state Ms. Clark had made significant progress, and the only activity she hadn't returned to was driving. (Tr. at 426). Indeed, those notes also show that she did not have issues with her right hand grip at the time. (*Id.*). And after that treatment session, Ms. Clark returned to driving. (Tr. at 202). The ALJ did not commit legal error by discounting Dr. Gordon's assessment of Ms. Clark's fingerling limitation, and the reasons for discounting that assessment were supported by substantial evidence.

### B. Evaluation of Ms. Clark's Testimony

"Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on [the] lack of objective medical evidence to fully corroborate the alleged severity of [those symptoms]." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). Rather, the ALJ must determine whether the impairment or combination of impairments "could reasonably be expected to produce [the] pain or other symptoms." *Batson*, 359 F.3d at 1196 (quotation omitted). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, []she may only find [the claimant] not credible by making specific findings as to

credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The ALJ may consider "at least" the following factors when weighing the claimant's credibility:

> [the] claimant's reputation for truthfulness, inconsistencies either in [the] claimant's testimony or between her testimony and her conduct, [the] claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [the] claimant complains.

*Thomas*, 278 F.3d at 958-59 (internal quotations omitted).

The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Id.* at 958. The ALJ meets this standard by providing a "narrative discussion" containing "specific reasons for [her] finding" that are "supported by the evidence in the case record." *Robbins*, 466 F.3d at 884 (quoting S.S.R. 96-7p (July 2, 1996)).

Ms. Clark testified that she suffered from an average of three migraine headaches per week, each for a few hours. (Tr. at 33). Ms. Clark also asserted that her migraines are brought on by sustained periods of reading or writing, or from staring at a computer screen. (Tr. at 33, 58). She also testified that the biggest barrier that prevents her from returning to work is her headaches. (Tr. at 54).

To discount Ms. Clark's testimony on the debilitating nature of her headaches, the ALJ provided a narrative discussion with several findings from the overall record. These include the treatment notes for her headaches did not indicate the same level of severity and frequency, that her credibility was damaged by her conduct before the hearing, and that she engaged in other physical activities. (Tr. at 37).

As for her right side fingerling limitations, the ALJ pointed to the assessment of Dr. Griffith, Ms. Clark's physical activities, and her general reputation for truthfulness as reasons for discounting her symptom testimony.

/ / /

/ / /

- 5 -

### 1. Ms. Clark's Previous Medical Treatment for Headaches

To discount Ms. Clark's testimony, the ALJ cited November 2015 treatment notes where Dr. Singh wrote that Ms. Clark's headaches had completely gone away in response to recently prescribed medication. (Tr. at 35). The ALJ noted that in November 2014, the severity of Ms. Clark's headaches decreased due to medication. (*Id.*) And the ALJ also relied upon Dr. Gordon's examination, which found that Ms. Clark's headaches were "greatly reduced and medication was helpful for such headaches." (Tr. at 34). An ALJ may rely upon evidence that a claimant responds well to treatment to establish that her subjective complaints are not entirely credible. *See Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996) (relying upon the fact that a claimant "responded well to treatment" in affirming the ALJ's adverse credibility finding).

Although Ms. Clark's headaches returned after the November 2015 appointment, the ALJ noted that Ms. Clark waited until the follow-up appointment to go see her neurologist, and did not schedule an appointment to address the headaches before then. (Tr. at 35). The ALJ also noted that Ms. Clark was prescribed an increase in medication at that appointment to combat the increased headaches just days before the hearing. (*Id.*).

The ALJ further stated that at one point during her treatment, Ms. Clark was only taking one Tylenol per week to combat her headaches. (Tr. at 35). While Ms. Clark was limited to taking Tylenol then due to an ongoing medical issue (Tr. at 557), the ALJ reasonably inferred that the headaches were likely less severe and frequent than Ms. Clark testified during this time period because of the *amount* of Tylenol she was taking—not because she was only taking Tylenol. This is a credible reason for discounting Ms. Clark's testimony.

The ALJ mistakenly pointed to an outpatient consultation from 2013 and asserted that "treatment notes detail that she reported headaches occurring only three and four times per month in 2013." (Tr. at 35). The document cited does not state that Ms. Clark suffered headaches a 3-4 times per month. (Tr. at 298-300). Instead, the treatment notes state that Ms. Clark was suffering from headaches three to four times per *week*, and that the

1 headaches started "about one year ago." (Tr. at 298). This is not a credible reason for
2 discounting Ms. Clark's testimony.

### 2. Ms. Clark's Childcare and Other Physical Activities

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154 ,1165 (9th Cir. 2014); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Ninth Circuit has explained that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

While Clark's current situation allows much more flexibility than she would have at a full time desk job, the ALJ points to several specific kinds of activities that Ms. Clark engages in to support her adverse credibility determination as to both her migraines and right-side limitations. The record indicates that Ms. Clark goes to the gym about 5 times per week (Tr. at 203), is able to drive herself to activities (Tr. at 202), gets groceries 1-2 times per week (*id.*), pays bills online (*id.*), prepares meals for her family, mops and does the dishes. (Tr. at 35). The ALJ used all of these activities to infer that Ms. Clark's symptoms are not as severe as she alleges.

### 3. Ms. Clark's reputation for truthfulness

Finally, the ALJ noted that Ms. Clark was not entirely truthful with counsel as to why she was unable to attend a medical examination scheduled to determine whether she had ongoing cognitive impairments. (Tr. at 35; Tr. at 267). At first she stated she was going to Michigan because the cooler weather would help her migraines, but it was later revealed that she had actually gone to Las Vegas. (Tr. at 29). The ALJ specifically stated that this fact caused her to give Ms. Clark's testimony less weight. (Tr. at 35). The claimant's reputation for truthfulness is a credible reason for discounting her testimony. *Thomas*, 278 F.3d at 958.

/ / /

/ / /

4. **The ALJ's Error Was Harmless**

Not all errors made in evaluating subjective complaint testimony undermine the ALJ's determination. *See Batson*, 359 F.3d at 1196-97 (explaining that an ALJ's error is harmless if it does not affect her ultimate conclusion and holding that a single error in a credibility determination was harmless because the ALJ gave numerous reasons for finding the claimant not credible that were supported by substantial evidence); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008). Rather, "[A]n ALJ's error [is] harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Molina*, 674 F.3d at 1115 (collecting cases). "The general principle [is] that an ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." *Id*.

While the ALJ mistakenly cited a 2013 outpatient treatment notes to discount Ms. Clark's testimony, the ALJ also provided several other specific, clear and convincing reasons that were supported by substantial evidence in the record to discount Ms. Clark's testimony, including treatment notes, her reputation for truthfulness and Ms. Clark's daily activities. Thus, this Court cannot find that the ALJ "arbitrarily found the claimant's testimony incredible." *Carmickle*, 533 F.3d at 1163. Instead, the error here was harmless.

**C.     Cognitive Disability**

In her introduction, the ALJ noted that Ms. Clark alleged that she was suffering from a cognitive disability. Prior to the hearing, the ALJ scheduled a medical examination to possibly obtain a diagnosis of Ms. Clark's cognitive impairments. But Ms. Clark missed the appointment due to undisclosed travel plans. Because there was no medical diagnosis of the cognitive disability other than Ms. Clark's testimony, it is not a medically determinable impairment. Thus, the ALJ did not err in by failing to make a determination as to severity at step two. *See Belknap v. Astrue*, 364 Fed. Appx. 353, 355 (9th Cir. 2010) (finding that the ALJ did not err by failing to make a severity determination where the claimant failed to submit a medical diagnosis). As for the new evidence, the Appeals Council correctly noted that the new evidence was not relevant because it was not available

for the ALJ's initial decision. And the ALJ specifically rejected a good cause argument because Ms. Clark's misled her attorney as to why she couldn't attend the medical examination. (Tr. at 29).

**CONCLUSION**

The ALJ made no error of law and there is substantial evidence to support the ALJ's denial of benefits.

**IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to **TERMINATE** this action and enter judgment accordingly.

Dated this 17th day of December, 2018.

_____
G. Murray Snow
Chief United States District Judge